Corporation, Benjamin Carson and Victor Villaflena, a series of more appellants, Julie Wright, appearing for appellees.  Good morning, Your Honor. Will you be dividing your time? No, Your Honor. I'll be taking whatever time we take. It'll be all taken by me. Okay. And do you want to reserve some time for rebuttal? I do, Your Honor. I think I'd like to reserve six minutes. Six minutes. Okay. Please go ahead. Good morning, Your Honor. Victor Villaflena, on behalf of the appellant GXP, co-counselor Ben Carson is at the council table with me. There are really two principal issues in this case from our perspective. Standing and the application of law of the case to the preclusive effect of certain findings made by the trial judge below. With respect to standing, Your Honor, we believe that the – and we don't argue, as the defendants appellees seem to say we argue. We don't argue that standing is not required. Standing is required. What we're arguing is that in this case, when you're involving a private right, seeking vindication of a private right, standing is satisfied by the mere injury that we suffered by the breach of contract. We're saying that the Lujan standards and all the cases flowing from Lujan, those standard requirements don't apply to this – to these cases. Not that standing is not required. Standing, in this case, is substantiated because we have a contract, which is effect two, that are not disputed, signed by parties. We allege breaches of the contracts, and we allege that it causes a certain harm to us. You've alleged all that. I have a question about the harm. At the end of the process, there was a sale of the company's assets that paid creditors 100 cents on the dollar. Correct. That's right? That is correct. So the only people who were potentially injured were the shareholders of this company. That is correct. How does the company have standing to sue for injury to its shareholders? Well, the context here is that there was a going concern that the company had, and the harm that was caused here was that it defeated the reorganization, which would have created value, which would have flowed to the equity, but it might have flowed to creditors. We are in the process of negotiating a plan where creditors might have received not just cash, but might have received equity as well. So the harm here was caused to the possibility of reorganization versus sale. That's the harm. You're saying creditors might have gotten more than 100 cents on the dollar? They might have gotten equity, which could have resulted in more than 100 cents on the dollar. That is correct, Your Honor. So what we're saying here in terms of standing, again, going back to that issue, is that all those cases that's cited by the other side, by the appellees, deal with the classic cases of public rights. And all those cases talk about, you know, standing, requiring, based on separation of powers, based on case and controversy. None of those things are applicable in this case. I've got to say, I've never really understood the difference between private and public rights. I've just never quite understood that. It is an issue that has some subtlety to it. But here, when we have a contract right, for example, the classic case of the Lujan, what was the right that was being vindicated? It was the right by a private party to sue under the Endangered Species Act for some wildlife that was being harmed in some country in Europe. That was vindicating a public right. That's what the court said. That was a public right. That was something that did not injure the plaintiff specifically. If it was a harm at all, it was a harm generalized to the whole population because of this possible failure to exist of this particular wild animal. So that was a public right. In our case, we have two parties suing on a contract. This is traditional, historical, judicial involvement and adjudicating dispute between two individuals. But these are non-debtor parties, right? No, one is a debtor party. This is a predecessor. This is the successor debtor. This is after the sale of the assets. This is what was left after the plan of your organization and the payment of creditors, right? There was a payment of creditors, but this is a debtor. It simply changed its name, and it's post-confirmation, but it is a debtor, post-confirmation. What I'm concerned about is did you reserve in the plan the right to pursue these claims and identify Argonaut as the source of your claim? I'm glad you asked that, Your Honor, because the answer is yes. In fact, when we get to the law of the case, the second issue, we would argue that if law of the case applies, it applies for our benefit because in the plan, we specifically reserved the right to make these claims, and those were not identified in the plan itself. There was a general statement to reserve rights, and then there was an exhibit, which was the sale document, and in that sale document, it was specified that we reserve rights to sue these particular defendants on these particular claims. So the answer to your question is yes, it was reserved specifically. Is the bankruptcy court the right place for this case? I mean, what's related to post-confirmation jurisdiction here? I don't see any impact on the bankruptcy case. The plan's confirmed. The creditors are paid. Why? That was raised below, and the bankruptcy court found jurisdiction, so that's not an issue. Our jurisdiction can always be raised. I appreciate that. But that was actually adjudicated below, heard below, and the court said she had jurisdiction. And one of the bases for the courts determining that she had jurisdiction was that she felt our allegations sufficiently implicated the integrity of the bankruptcy process. We believed that the bankruptcy process, the integrity of it, had been tampered with by the conduct of these defendants in submitting a secret offer, disclosing it to no one, which was a result of their violation of agreements with us in terms of confidential information and confidential communications that we had that were disclosed. So that was the basis for the judge's determination, that she thought that the system and the process had been sufficiently, we alleged, and she took it on at that point as the basis, that there was a sufficient contamination of the bankruptcy process. So that was the basis. So, withstanding, going back to that, I will say that I think there are no cases that the penalties are cited that support their contention. We have cited one case, the Deanderson case, not binding on this court. It goes through the analysis and actually says this law could go both ways. But on analysis, the better view is the view we're espousing. And I know we're not criticized, but there's comments made that we cite to a lot of dissents and concurring opinions. But one argument I would make is that if you get Justice Thomas and Justice Kagan to agree, we must be right. And they did agree with us that the private right distinction is a valid distinction and the threshold for standing is met. Now, remember, this is a 12b1 case. This is not a 12b6, not a Rule 56. And we understand that at some point our complaint will have to meet those standards, will be tested by those standards, but not at the standing, not that we can't walk into the court and make a claim. And that's what's being truncated here on a 12b1. It is what Justice Kagan has called the aggrandizement of the judiciary, where they can, at such an early stage with such a slim record, say you can't even walk into my court. That's what we're arguing. We should have access to be able to make this claim in this court. About the issue of contaminating the bankruptcy process, one of the things that bothers me is your client's view, I think, is that the NDAs made it basically impossible for these defendants to make an offer for the debtors' assets without the debtors' consent. Is that a fair summary? Well, our allegation is that they divulged information. It's no different than locking the door at night when he closes the lab. There are secrets there. We can't give up secrets to anybody and have anybody use them. This is protecting property of the estate. And, yes. How do we know that the confidential information was used? We know the confidential information was used because, one, we divulged a great deal of it. We had meetings after meetings, so we divulged it. We also know that the committee and us, we had a very positive, constructive working relationship, the committee and committee counsel. And it wasn't until this secret bid. Why was it secret? I have no idea. It wasn't even shown to us after the courts told them to disclose it. They never disclosed it. Well, of course, your NDA was secret, too, right? That was not disclosed to anybody. No, it was not disclosed. And, interestingly enough, the committee had an NDA with them as well, and that was the basis for their refusing to disclose it to us. We can't disclose it to you because we've got an NDA with the same people that we have an NDA with, and we can't disclose it. I guess my problem is that if this agreement had the effect of locking bidders out of the process, I think that's a breach of the debtor's fiduciary duty. That's an interesting point. I would say that, in this case, exclusivity had terminated, so the committee was free to formulate its own plan. And our argument would be they could talk to anybody and try to come up with a plan, so they weren't constrained. We had disclosed to everybody that we were in negotiations with people. We disclosed that to the committee, so they knew we were in negotiations. They were very preliminary. We didn't think it was necessary at that point, premature, to really get into the details, but they knew we were negotiating that. So we weren't locking anybody out. We're simply saying we're negotiating and we're sharing our secrets, and you can't use those secrets. We're locking the door to the lab. You can't go in there and show you the lab and now you can show all our equipment and all our technology to anybody. No. I've taken you inside the six minutes you want to reserve, so if you want to stop, that's fine. If you want to keep going, that's fine, too. I'll make two quick points on law of the case. That's our second argument. Even if we have to get to beyond and meet these extraordinarily high standard requirements by Lujan that we don't believe are applicable, the judge below has said we can't even prove, the reason I'm going to deny, dismiss your complaint, is I don't think you're allowed to prove causation because I've already found all these issues below, and you can't re-litigate them. Our argument, Your Honor, is that those findings are not entitled to preclusive effect. They were found on the basis at the time it was an emergency hearing, two days' notice, later extended for a couple of weeks, no evidence, no witnesses, no documents. The judge expressly denied any evidence during the hearing, and I don't think those findings, based on that kind of record, are entitled to preclusive effect. Don't you think that the order appointing an examiner was an appealable order? Well, yes, it was, but we, interesting point there, it was. Isn't that the trigger for preclusion? Not necessarily. We disputed the facts. We didn't concede the facts. But you didn't appeal that order. We did not appeal that order. And if you look at the cases that are cited, the Radner case, the Rickard case, I believe, Judge Brand, you were on that panel. I know you've had a few cases since then, so that may not be top of mind. But all those cases involved an evidentiary hearing, hearings, witnesses, examinations, documents. In the Rickard case, actually, an appeal to the BAP, and only once those facts were affirmed by the BAP that those facts get preclusive effect. We argue that doesn't apply in this case. Okay. Thank you. All right. Let's see. Ms. Grice. Good morning, Your Honors, and may it please the Court, Julie Grice on behalf of Appalese. I appreciate the panel's comments at the beginning of the hearing that are briefs, and so I will endeavor to avoid rehashing those arguments, and instead what I'd like to do is address some specific points raised in the appellant's reply brief and also some comments that Mr. Villaplana just made. First, I will address the law of the case doctrine and specifically why appellant's characterization of the order appointing the examiner as preliminary or tentative is incorrect. And second, I'll address appellant's arguments with respect to standing. At bottom, Your Honors, GXP appellant has still failed to cite to any authority that supports its proposition that it's advocating for here that standing is automatically conferred in any breach of contract action. That's simply not the case. And, of course, I'm happy to answer any questions that the panel might have. You know, I think my main problem with the whole standing argument is it really seems to me that there's a distinction between standing and merits and between a dismissal for lack of standing and a dismissal, say, for lack of a plausible allegation of a cause of action. And I have concerns that in this case the bankruptcy court kind of took standing pretty far towards the merits and pretty far towards plausibility. So how far can the court go into the merits of the case in doing a standing analysis? That's a very broad question, but I hope you understand where I'm driving. I believe I do, Your Honor, and I'll do my best to answer. But if I miss anything, I'm happy to answer any follow-up questions. So in this case, it's a sort of unique situation in that there was a fully developed record in the bankruptcy proceeding. And so on a 12B1 factual attack on jurisdiction, which is what we have here, the court can go beyond the allegations in the complaint and look to the very well-developed bankruptcy record, look at its docket of judicially noticeable facts, and reach what might otherwise be sort of a merits consideration of jurisdiction. Now, even if the court were to look at this case from a 12B6 perspective or a merits perspective, it can still take judicial notice of certain facts in the record, and you would come to the same conclusion. So I'm not sure that that matters. But to answer Your Honor's question, I don't think the bankruptcy court took it too far. She was entitled to look beyond the allegations in the complaint under the 12B1 factual attack, which is exactly what she did here. So I'm not sure if that answers Your Honor's question in its entirety, but I'm happy to answer any follow-up questions. Well, I think what we're struggling with in that regard is the distinction between 12B1 and 12B6. What you're suggesting is you can convert a 12B1 motion into a 12B6 motion. You can actually go to the merits all the way. And so what's the point of having 12B6 then if 12B1 encompasses both provisions? Sure, Your Honor. And it's a fair question, and I didn't mean to suggest that. What I was suggesting is that a 12B1 motion can look beyond the allegations in the complaint, and that's a threshold issue. The 12B1 analysis is a threshold issue. And so the court must look at whether or not it has jurisdiction in the first instance. If the court were to find that the 12B1 analysis going beyond the complaint, as we've argued was proper here, does not apply or it was somehow improper, then the court could still look to those same facts and allegations beyond the complaint on a 12B6 analysis and would come to the same conclusion that dismissal was appropriate. Did the bankruptcy court do the 12B6 analysis in this case? The 12B6 analysis, Your Honor, the bankruptcy court addressed the statute of limitations arguments for all but the breach of contract and misappropriation of trade secrets claims. So she did address the 12B6 arguments in that regard. With respect to the breach of contract and misappropriation of trade secrets claims, I would say obviously she addressed causation issues in the standing analysis, but that same causation hurdle or obstacle that appellants face is equally applicable to the 12B6 analysis. So in that sense, there's enough there for this court to affirm, but she obviously stopped at the jurisdictional analysis because that is a threshold issue. Okay. Thank you. Sure. So I'm happy to continue with the standing analysis and point out a few other points or return back to the law of the case document, whichever the panel prefers. But perhaps just for continuity purposes, I'll continue with the standing issues. And Your Honors raised the question of this distinction between public and private rights, and essentially what appellants have argued in their reply brief is that the appellees have ignored this distinction between public and private rights. But what appellant wrongly contends is that the standing requirements that appellees have set forth, injuring fact, causation, and redressability are somehow inapplicable to a breach of contract action or that these elements of standing are automatically satisfied in every breach of contract case. And that's simply not what the case law holds. Appellants walk through a number of cases that have been briefed in the party's various briefs, arguing that the cases that appellees rely on are inapplicable because there is some aspect of a vindication of a public right. But what appellants ignore is that the court's analysis in each of those cases with respect to standing for a breach of contract cause of action is a separate inquiry from the aspects of those cases involving a vindication of a public right. Well, you know, the problem I have with that is that it seems to me that the elements of a breach of contract case map almost exactly onto the elements of standing. You know, a breach of contract case is a valid contract to offer acceptance, consideration, breach, and damages. So if you have a breach of contract, you've got a legal wrong. If you've got a breach, you know, if you've got damages, you've got redressability. And it seems to me, although the words are different, they map almost exactly onto the standing requirements. So I find it hard to see how you'd have a breach of contract case where there wasn't standing. So I think the Jiang versus Nexo case, which is the crypto case that we cited in our briefing, is a helpful example in terms of distinguishing between the elements of a cause of action for breach of contract and standing. In that case, the plaintiff had alleged breach of contract on three theories, and the court looked at whether or not the plaintiff had standing in each of those instances to assert breach of contract on that theory. And in the third and sort of final assessment of standing, the court found that the plaintiff, although it had alleged breach of contract, it had not sufficiently alleged injury in fact. And this is with respect to the notice of liquidation aspect of its breach of contract theory. So I think that case is helpful in distinguishing between the causes of action, excuse me, the elements of a cause of action for breach of contract and what is required for standing, injury in fact, causation, and redressability. Although I do agree with Your Honor that they do track in many ways. They're very similar, but they are distinct. And there's case law out there that says that they should be assessed separately. I believe food buy is another case which is helpful in that regard. In that case, it sort of unequivocally states that simply being a party to a contract and alleging its breach is not sufficient to establish standing. And in that case, although it's outside the Ninth Circuit, it does reject nearly identical arguments to what GXP has asserted here. Just briefly, Your Honors, on the standing issue, Mr. Villaplana, in their reply brief, they refer to this Dinnerstein case. I'll just point out a few points on that case. It's from the Northern District of Illinois. And in that case, the court still applied the tripartite test of Article III standing, injury in fact, causation, and redressability. And I think a critical difference between that case and this case is that there was a facial attack on jurisdiction in that case. Here, there was a factual attack on jurisdiction. So I think that is a critical difference. And finally, with respect to standing, Your Honors raised this issue in your questions to Mr. Villaplana. There is this issue of whether or not GXP even had a legally protected interest to which it can assert injury. And as the Bankruptcy Court correctly found and as we briefed, there is no legally protected interest that GXP can assert in terms of preventing the offer, withholding information from the Bankruptcy Court. It had duties of candor and duties to be transparent under the Bankruptcy Code, and GXP simply could not contract around those obligations. With respect to the Law of the Case Doctrine, turning to that issue, GXP cites no authority that equates the order appointing the examiner in this case to a preliminary or tentative ruling such that preclusive effect would not apply. The Court made definitive factual findings on a full record, and critically, appellant was provided the opportunity to respond to that order. The motion for appointment of the trustee was continued, and appellants not only agreed with the appointment of the examiner, but then later cooperated with the appointment of the examiner. As Your Honors pointed out, did not appeal the appointment of the examiner, and so this is a very different situation from a preliminary injunction proceeding where preclusive effect would not apply. Second, the appellant's arguments with respect to the Law of the Case is really just a continuation of its arguments that it was denied due process, and for the reasons I just articulated, that argument lacks merit, and I think the Bankruptcy Court correctly found that that argument is pure hogwash. There was no denial of due process here. Appellant was given an opportunity to respond, and it simply did not pursue that opportunity. And critically, the Bankruptcy Court did make definitive factual findings as set forth in the December 17th transcript. There's a very helpful discussion of what the Court found and the factual findings that the Court found that supported the appointment of the examiner. GXP cites two cases, and I'll just touch on this briefly because I see I'm getting somewhat low on time, and I want to make sure I address any additional questions that the panel might have, but GXP cites in its reply brief two cases with respect to the Law of the Case Doctrine that are inapposite and not applicable here, the GemCap case and the Platten case. In the GemCap case, the Court declined to apply the Law of the Case Doctrine to an order by the magistrate judge denying a motion for a writ of attachment, and the reason the Court denied application of the Law of the Case Doctrine was because the magistrate judge had not made definitive factual findings. There were factual disputes at issue, and as I just mentioned, that is not the case here. The bankruptcy judge made definitive factual findings, and as she stated in the transcript, the sort of lack of trust in the debtor was not disputed. With respect to the Platten case, that was an ex parte request, and that is not similar to what we have here. The appointment of the examiner was not made on an ex parte basis. Both parties, including the appellant, had an opportunity to be heard, and so I think that is readily distinguishable such that neither of those cases apply. So with that, I'll pause there and simply request that the panel affirm the Bankruptcy Court's dismissal order in its entirety, and, of course, would answer any final questions that the panel might have for me today. Any questions? No. Okay. Thank you very much. Thank you, Your Honors. Mr. Villaplana, you've got, I think, almost three minutes, so go ahead, please. I'll go through a couple of points. One, the judge below did not rule on 1286 to answer the question, except with respect to certain claims that she ruled on substantial limitations with leave to amend. So that's why we're not appealing those. If we go forward, we have leave to amend those causes of action. So this is purely a 12b-1, where she far exceeded the limits of 12b-1. Two, the Thornhill case, a Ninth Circuit case, cited by the appellate, is very useful because it gets to the point Judge Ferris, you mentioned. In there, the court said that if the analysis for jurisdiction purposes cannot be separated from the analysis of the merits, then it has to be treated as a Rule 56 motion. And that's what she's done here. In this case, she went to the merits in the guise of a 12b-1 ruling. But Thornhill is very clear on that. You can't, if you're really getting into the merits of the claim, then you have to treat it as a Rule 56. And it's entirely different than what was done in this case. Then the final thing, we do not deny, we do not claim that there was a denial of due process. The famous saying, what's a due process? Whatever process is due. And the process was followed at that time on an emergency basis, which we don't think there was an emergency. But in any event, the process that was followed was fine under the circumstances at that time. We're only arguing that those findings are not entitled to preclusive effect. That's all we're saying. We're not challenging the findings. We're not challenging the appointment of the trust of the examiner. That happened. All we're saying is we ought to be able to show that the cause of all of this was not our doing, not what we did, but what the defendants did. And interestingly enough, the defendants arguing the nondisclosure issue is a little bit kind of ironic, since they claimed an NDA, they violated a court order saying to expose it. They never did. And now they're saying we were somehow wrong in having an NDA. That's it, Your Honor. And, of course, we ask that this court reverse the lower court in its entirety. Thank you. Okay. All right. Thank you very much.  The matter is submitted. Thank you, Your Honor.
judges: Faris, Brand, and Gan